[Cite as *State v. Sulivan*, 2017-Ohio-8806.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2017-L-031** |
| CHRISTOPHER L. SULLIVAN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2016 CR 000238.

Judgment: Affirmed.

*Charles E. Coulson*, Lake County Prosecutor, and *Anna C. Kelley*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Charles R. Grieshammer,* Lake County Public Defender, and *Vanessa R. Clapp,* Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} Christopher L. Sullivan appeals from the judgment of the Lake County Court of Common Pleas, sentencing him to two years community control for his convictions following a bench trial on two counts of theft from a person in a protected class. Mr. Sullivan contends his convictions are based on insufficient evidence, and are against the manifest weight of the evidence. Finding no reversible error, we affirm.

{¶2}    Mr. Sullivan is a general contractor in the home improvement business. Unfortunately, he is also an alcoholic.  At trial, he testified he was in the full grip of the disease by the beginning of 2015.  He entered rehabilitation at least twice that spring, in March and June.  Feeling he was incapable of soliciting new business, Mr. Sullivan hired an old acquaintance, Richard Nichols, in March 2015 to do so.  Mr. Nichols testified he quickly became aware Mr. Sullivan was drinking too much.  Mr. Sullivan did not maintain an office, so the men would meet at bars.  Mr. Nichols testified Mr. Sullivan would usually be drunk, even in the early afternoon, and taking pills as well.

{¶3}    June 20, 2015, Mr. Nichols met with Joseph Pluscusky at the latter's house in Kirtland, Ohio.  Mr. Pluscusky, then aged 69, needed a new roof.  He signed a contract with Mr. Sullivan's company that day, to get his roof repaired for $15,000.  He gave Mr. Nichols a check for $5,000 as down payment.

{¶4}    In early July 2015, Mr. Sullivan came to the Pluscusky residence with Eric Land, one of his two roofing subcontractors, and inspected the house from the ground. Mr. Pluscusky said the inspection was brief; that neither Mr. Sullivan nor Mr. Land actually went on the roof; and, that Mr. Sullivan was in a great hurry to leave.

{¶5}    Over the next five months, Mr. Pluscusky testified he attempted to call Mr. Sullivan about 100 times, to find out when work would commence.  He testified he reached Mr. Sullivan more than a dozen times, and that Mr. Sullivan's voice was usually slurred, as if he was drunk.  Mr. Pluscusky testified that Mr. Sullivan always had an excuse for why the work had not commenced: his father had suffered a heart attack; he had wrecked his truck in an accident; that Mr. Pluscusky's job was next on the list.

**{¶6}** In October 2015, Mr. Pluscusky contacted his attorney, Thomas J. Mayernik, to ask if he could hire a new roofer. Mr. Mayernik said he could, and wrote a letter, dated October 14, 2015, to Mr. Sullivan, warning him to contact Mr. Mayernik within seven days, or face potential legal action. Mr. Sullivan never responded to the letter.

**{¶7}** Mr. Pluscusky contacted Mr. Nichols to find him a new roofer. Mr. Nichols ceased working for Mr. Sullivan in July or August 2015. Mr. Nichols found another roofer, and the work was completed by the end of November 2015.

**{¶8}** Mr. Sullivan testified he always intended to do the Pluscusky job, but that his drinking, and its ramifications, prevented him. He testified that Eric Land, the subcontractor he wanted for the job, ended their business relationship in July or August 2015. Mr. Sullivan admitted he was being sued by his principal supplier of building materials at the time he contracted with Mr. Pluscusky, evidently for non-payment, but testified his credit, at the time, remained good with other suppliers. Mr. Sullivan testified he re-entered rehabilitation in July or August 2015, then again in October 2015. During the August hospitalization, his wife, Amy, instituted divorce proceedings. He testified she used money from his business account to hire an attorney, which left him insufficient funds to reimburse Mr. Pluscusky. Mr. Sullivan also testified his wife, who controlled the bookkeeping and finances for his construction company, frequently turned off his cell phone after August 2015, which was one reason he rarely answered Mr. Pluscusky's phone calls.

**{¶9}** Mr. Sullivan admitted he never ordered or purchased any materials for the project.

{¶10} November 23, 2015, Mr. and Mrs. Pluscusky went to the Kirtland Police Department, and spoke with Officer Joseph Megyesi. Officer Megyesi called Mr. Sullivan, and told him he needed to do the roofing job, or return the $5,000. Officer Megyesi testified Mr. Sullivan assured him he would do one or the other.

{¶11} December 11, 2015, Officer Megyesi filed a criminal complaint against Mr. Sullivan in the Willoughby Municipal Court. July 7, 2016, the Lake County Grand Jury returned a two count indictment against him: count one, theft from a person in a protected class, a fourth degree felony in violation of R.C. 2913.02(A)(3); and count two, theft from a person in a protected class, a fourth degree felony in violation of R.C. 2913.02(A)(2). Mr. Sullivan entered a written plea of not guilty July 22, 2016. The matter came on for bench trial October 3, 2016. December 20, 2016, the trial court filed a judgment entry finding Mr. Sullivan guilty on both counts. Sentencing hearing was held January 19, 2017. By a judgment entry filed January 23, 2017, the trial court sentenced Mr. Sullivan to two years community control sanctions (including 80 days in jail). The trial court further ordered Mr. Sullivan to take and complete various substance abuse programs, to pay court costs, and to make restitution in the amount of $5,000 to Mr. Pluscusky.

{¶12} This appeal timely ensued, Mr. Sullivan assigning two errors. We deal with them in reverse order, finding the second dispositive of this appeal. It reads: "The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."

{¶13} "'In determining whether the verdict was against the manifest weight of the evidence," (* * *) (t)he court reviewing the entire record, *weighs the evidence* and all

4

reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)'" (Citations omitted.) * * *" (Emphasis sic.) *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 WL 738452, *5 (Dec. 23, 1994).

{¶14} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶15} With respect to the manifest weight of the evidence, we note that the jury is in the best position to assess the credibility of witnesses. *State v. DeHass*, 10 Ohio St.2d 230, paragraph one of the syllabus (1967).

{¶16} R.C. 2913.02(A)(2) and (3) provide:

{¶17} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

{¶18} "* * *

{¶19} "(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

{¶20} "(3) By deception[.]"

{¶21} In *State v. Dalton*, 11th Dist. Portage No. 2008-P-0097, 2009-Ohio-3149, ¶31, this court held:

{¶22} "To prove 'a violation of R.C. 2913.02(A)(3), the State must demonstrate

5

that at the time the defendant took the money he had no intent to repay the money or perform under the contract in exchange.' *State v. Coleman,* 2nd Dist. No. 2002 CA 17, 2003-Ohio-5724, at ¶29 (citation omitted). '(F)or a violation of R.C. 2913.02(A)(2), the State must prove that at the time the defendant exceeded the scope of consent of the owner of the money, he had the intent to deprive the owner of the money.' *Id.* (citation omitted). 'The law recognizes that intent can be determined from the surrounding facts and circumstances, and persons are presumed to have intended the natural, reasonable and probable consequences of their voluntary acts.' *State v. Garner*, 74 Ohio St.3d 49, 60, * * * [(1995)]." (Parallel citations omitted.)

{¶23} In support of his assignment of error, Mr. Sullivan argues the state failed to prove the mens rea necessary for these crimes: i.e., that *at the time* he contracted with Mr. Pluscusky, he had no intent to perform the contract, and that he intended to deprive Mr. Pluscusky of his money. He cites to his own testimony that he did intend to perform the contract, and that he had sufficient credit and money to purchase materials at that time. He notes he and his subcontractor, Mr. Land, inspected the house. He explains his failure to respond to Mr. Pluscusky's phone calls due to his repeated hospitalizations; his divorce; and the fact his wife cut off his phone service periodically. He explains his failure to reimburse Mr. Pluscusky due to his wife spending his business account to hire divorce counsel.

{¶24} We find the opinion of the Second Appellate District in *Coleman*, *supra*, persuasive. Mr. Coleman was convicted of four counts of theft for failing to complete roofing jobs. *Id.* at ¶1-2. The court of appeals analyzed the convictions separately, and reversed three. *Id.* at ¶34, 38, 41. Regarding the first, it noted the homeowner admitted

6

extensive work had been done, and materials obtained to complete the job. *Id.* at ¶31. Regarding the second, the court observed Mr. Coleman had attempted to order the shingles required, and gave the homeowner a promissory note for the down payment he had received when the homeowner cancelled the contract. *Id.* at ¶36-37. Regarding the third conviction, the court pointed to the facts that Mr. Coleman had completed the tear off of the old roof, and commenced installation of the new one, when the homeowner cancelled the contract. *Id.* at ¶40. The court of appeals only affirmed the fourth conviction, wherein Mr. Coleman had accepted money from the homeowner, but never did any work nor ordered any materials. *Id.* at ¶43.

{¶25} In this case, Mr. Sullivan never ordered any materials for the job. He never commenced the tear off of the old roof. When his subcontractor, Mr. Land, refused to continue working for him, he never hired another subcontractor, or did the work himself. When his financial position deteriorated in August 2015, he avoided telling Mr. Pluscusky that he no longer had the money to complete the job, or to repay Mr. Pluscusky at that time. The evidence supports the conclusion that Mr. Sullivan had no intent to perform the contract when he entered it, in violation of R.C. 2913.02(A)(3); and that he intended to deprive Mr. Pluscusky of his money when the contract was entered, in violation of R.C. 2913.02(A)(2). Mr. Sullivan's convictions are not against the manifest weight of the evidence.

{¶26} The second assignment of error lacks merit.

{¶27} The first assignment of error is: "The trial court erred to the prejudice of the defendant-appellant when it denied his Crim.R. 29(A) motion for judgment of acquittal in violation of his rights to fair trial and due process as guaranteed by the Fifth

7

and Fourteenth Amendments to the United States Constitution and Article I, sections 10 and 16 of the Ohio Constitution."

{¶28} A Crim.R. 29 motion challenges the sufficiency of the evidence presented by the state. *State v. Wireman*, 4th Dist. Pike No. 01CA662, 2002 WL 971842, *2 (April 2, 2002). A finding that a judgment is not against the manifest weight of the evidence necessarily means the judgment is supported by sufficient evidence. *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶32. Having determined that Mr. Sullivan's convictions are not against the manifest weight of the evidence, it follows that they are supported by sufficient evidence.

{¶29} The first assignment of error lacks merit.

{¶30} The judgment of the Lake County Court of Common Pleas is affirmed.


DIANE V. GRENDELL, J.,

THOMAS R. WRIGHT, J.

concur.